IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,959

STATE OF KANSAS,
*Appellee*,

v.

TERRANCE ISAIAH SIMS,
*Appellant*.

SYLLABUS BY THE COURT

The concurrence of a majority of the justices sitting and of not fewer than four justices shall be necessary for a decision.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 5, 2017. Appeal from Wyandotte District Court; BILL L. KLAPPER, judge. Submitted without oral argument April 9, 2026. Opinion filed August 14, 2026. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

*Kristen B. Patty*, of Wichita, was on the brief for appellant.

*Garett C. Relph*, deputy district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

PER CURIAM: Terrance Isaiah Sims challenged his three convictions for failing to pay the Kansas Offender Registration Act (KORA) registration fee. He initially argued the KORA registration scheme violated substantive due process protections under the Fourteenth Amendment because it did not serve any legitimate government interest. The Court of Appeals rejected this argument, holding that the scheme serves an interest in

1

public safety. Before this court, appellate counsel cited authority in a Rule 6.09 letter supporting a conclusion that the registration scheme violates procedural due process. A majority of the court determined counsel performed deficiently for failing to pursue a procedural due process argument earlier in this case. The court retained jurisdiction and remanded the case to the district court for a determination of whether counsel's deficient performance prejudiced Sims and ordered the parties to file a copy of the district court's decision no later than 30 days after its entry. *State v. Sims*, No. 114,959, 2019 WL 1087363, at *6-7 (Kan. 2019) (unpublished opinion). Justice Stegall dissented, writing that counsel could not be deficient for failing to anticipate future constitutional arguments. He would have instead considered the constitutional validity of the statute without a remand.

On remand, the district court concluded trial counsel's performance prejudiced Sims. The district court filed its opinion in January of 2020. No party informed the court of that decision as we ordered them to do. In 2024, the State filed a copy of the decision in response to this court's order to provide a status update on the case.

We now consider the district court's decision. Justice Standridge took no part in this review because of her prior connection with the case while on the Court of Appeals. Justice Luckert retired. The five remaining justices agree that Sims' convictions for failing to pay KORA registration fees must be reversed, and so we reverse his three convictions. Kan. Const. art. 3, § 2 ("[T]he concurrence of a majority of the justices sitting and of not fewer than four justices shall be necessary for a decision.").

While five justices agree Sims' convictions must be reversed, we differ in how we reach that conclusion. Justice Stegall, joined by Justices Wall and Walsh, would consider whether the challenged statute is a facial violation of the substantive due process protections because it is not rationally related to any legitimate government interest.

2

Chief Justice Rosen and Justice Biles would find the district court's prejudice ruling stands without further review by this court because the State failed to comply with the timeline set by this court's order to inform the court of the prejudice determination.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

STANDRIDGE, J., not participating.

* * *

STEGALL, J., concurring:  When this case was previously before the court, I opined that it was a mistake to find Sims' counsel deficient for failing to raise an argument later used by a panel of the Court of Appeals (in a different case) to find that imposing felony liability on a person for failing to pay a $20 Kansas Offender Registration Act (KORA) registration fee could be unconstitutional if that person was indigent. Instead, I suggested that the actual argument made by Sims' counsel—that, indigency or not, imposing a criminal felony sanction for failing to pay an administrative fee to the State of $20 is *always* unreasonable, arbitrary, and not rationally related to any legitimate state interest— was worth considering on its own merits and likely to prevail. And if it did prevail, Sims' counsel could not have rendered ineffective assistance. Now, a plurality of this short- handed five-member court agrees.

Because we still do not have a majority holding of the full court on this question, we cannot know for certain whether Sims' original claim—that K.S.A. 2018 Supp. 22- 4905[1] is facially unconstitutional because it fails a simple rational basis review—would ultimately prevail. But today's plurality points in that direction.

3

"[W]hen a statute deprives an individual of liberty, the Due Process Clause of the Fourteenth Amendment to the United States Constitution 'imposes procedural and substantive due process requirements.' *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008). Substantive due process 'protects individuals from arbitrary state action,' while procedural due process 'protects the opportunity to be heard in a meaningful time and manner.' *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 462, 447 P.3d 959 (2019)." *State v. Genson*, 316 Kan. 130, 138, 513 P.3d 1192 (2022).

Though often referred to as a "substantive due process" challenge, this species or constitutional claim can also properly be described as a challenge to a legislature's exercise of the police power. That is, the 14th Amendment limits the police powers of the state to measures that are rationally related to a legitimate state interest. *Genson*, 316 Kan. at 138 ("'While the legislature is vested with a wide discretion to determine for itself what is inimical to the public welfare which is fairly designed to protect the public against the evils which might otherwise occur, it cannot, under the guise of the police power, enact unequal, unreasonable or oppressive legislation or that which violates the Constitution. If the classification provided is arbitrary, . . . and has no reasonable relation to objects sought to be attained, the legislature transcended the limits of its power . . . .'").

Our state Constitution—which Sims invokes—may impose similar limits on the police powers of the Kansas Legislature. For today, however, we need only look to the black letter tests applied under federal, 14th Amendment precedent. At a minimum, every law must "be rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997). "Under this standard, we will uphold a statutory classification so long as there is 'any reasonably conceivable state of facts that could provide a rational basis for the classification.' [Citation omitted.]" *United States v. Skrmetti*, 605 U.S. 495, 522, 145 S. Ct. 1816, 222 L. Ed. 2d 136 (2025).

And so, I will briefly turn to the basic question which I previously suggested should have been asked and answered when we first reviewed this case. Is imposing strict criminal liability for the failure to pay a $20 administrative fee—which may be a felony punished by significant time in prison—within the Legislature's constitutional police powers? This plurality opinion cannot provide a definitive answer, given the unique nature of this case, the way we short-circuited a full briefing and argument on the question, and the short-handed nature of the five-member court deciding the case. That said, I suggest that the challenged statute is likely so arbitrary and unreasonable that it extends beyond the police power of the state and therefore lacks any rational or reasonable relationship to a legitimate state interest.

> "The government 'cannot under the guise of the police power enact unreasonable and oppressive legislation or that which is in violation of the fundamental law.' *Delight Wholesale Co. v. City of Overland Park*, 203 Kan. 99, 103, 453 P.2d 82 (1969). Indeed, the police power 'extends only to such measures as are reasonable,' and a law enacted pursuant to that power '"must be fairly designed to protect the public against the evils which might otherwise occur."' *Junction City*, 226 Kan. at 534-35 (quoting *City of Baxter Springs v. Bryant*, 226 Kan. 383, Syl. ¶ 5, 598 P.2d 1051 [1979])." *State v. Ingham*, 308 Kan. 1466, 1483, 430 P.3d 931 (2018).

Here, Sims was convicted of three crimes—two of them felonies—over a matter of $60, *after* showing up to the sheriff's office to register pursuant to KORA. Indigency aside, I cannot imagine what "evils" the government must "protect the public" from by tossing into prison a registered offender who actually registers but who owes $20 in KORA fees. See *Dissmeyer v. State*, 292 Kan. 37, 44, 249 P.3d 444 (2011) ("It is a peculiarity of the Kansas statutory scheme that maintaining a pinball machine or a computer, devices that *might be used* for gambling, is now a level 9, nonperson felony, while possessing a slot machine that *is actually used* for gambling is a class B nonperson misdemeanor. This suggests that no rational basis exists for the sweeping definition of gray machines that the legislature has adopted."); *Thompson v. KFB Ins. Co.*, 252 Kan.

5

1010, 1022-23, 850 P.2d 773 (1993) ("However, where, as here, the only basis for the classification is to deny a benefit to one group for no purpose other than to discriminate against that group, the statutory classification is not only mathematically imprecise, it is without a rational basis and is arbitrary. Here, the challenged classification unreasonably discriminates in favor of claimants demanding $150,000 or less and unduly burdens those seeking judgments in excess of $150,000."); *Henry v. Bauder*, 213 Kan. 751, 762, 518 P.2d 362 (1974) (Kansas automobile guest statute imposing legal liability on driver only if guilty of some act constituting recklessness or willful or wanton misconduct fails rational basis test); *Joseph v. Henderson*, 834 So. 2d 373, 374-76 (Fla. Dist. Ct. App. 2003) ($20 booking fee violated equal protection and due process).

I therefore concur in the result—and simply note that it should have, and could have, been reached seven years ago.

WALL and WALSH, JJ., join the foregoing concurring opinion.

* * *

ROSEN, C.J., concurring:  Normally, a party who loses a point at the district court level must file an appeal if the party wants a higher court to review that decision. A statute imposes a deadline for when the party must file a notice of appeal or cross-appeal to preserve an issue. K.S.A. 60-2103. The failure to file the appropriate notice on time may prevent appellate review of an issue. E.g., *Cooke v. Gillespie*, 285 Kan. 748, 176 P.3d 144 (2008). See also *Pretty Prairie Wind LLC v. Reno County*, 62 Kan. App. 2d 429, 434, 517 P.3d 135 (2022) (appellate notices required to bring adverse ruling to appellate court may not be "required when a party is merely challenging the district court's *reasoning* underlying a decision already subject to appeal").

6

This case deviated from our typical appellate procedure. We rarely remand for factual findings while an appeal is before us. We did so here based on considerations of "judicial economy, fairness, and equity." *State v. Sims*, No. 114,959, 2019 WL 1087363, at *6 (Kan. 2019) (unpublished opinion). Given that procedural posture, the next steps for these proceedings do not necessarily fall within the rules governing a typical appeal.

Because this case fell outside the normal appellate procedure, we provided some guidance to the parties to facilitate proceedings after remand. We retained jurisdiction and ordered the parties to bring the case back to our attention by filing "a copy of the district court's final decision on remand in this court no later than 30 days after its entry." *Sims*, 2019 WL 1087363, at *7. When parties follow our direction after a remand for fact finding, we may simply resume our analysis after we receive the district court's factual findings. E.g., *State v. Wright*, 307 Kan. 449, 456-59, 410 P.3d 893 (2018). But that requires that the parties comply with this court's direction to file the district court's final decision.

Here, neither party informed this court of the remand decision within 30 days. The district court filed its decision on January 24, 2020. Thirty days following was February 23, 2020, a Sunday, which we exclude from our time computation. Thus, the district court's final decision should have been filed in this court on or before February 24, 2020. See K.S.A. 60-206 (rules for computing time). It was not, even though this date occurred well before the court suspended time standard and deadlines in response to the COVID-19 pandemic. See *In re Bell*, 317 Kan. 334, 335, 529 P.3d 153 (2023) (detailing court administrative orders addressing timelines during the pandemic). We see no reason for the parties' failure to follow this court's direction for years, doing so only after this court ordered the parties to provide a status update in June of 2024.

7

The district court's decision was adverse to the State; the district court determined counsel's deficient performance prejudiced Sims. Both parties had a mechanism to bring that decision before this court. But the State, faced with an adverse determination, failed to avail itself of that mechanism. Just as appellate review may be foreclosed when a party fails to follow established procedure, I would conclude our review here is foreclosed by the State's failure to timely file the district court's adverse determination. Thus, the district court's prejudice determination stands and, when combined with our prior determination of deficient performance, requires reversal of Sims' convictions that resulted from that prejudicially deficient performance.

Our concurring colleagues suggest the Court of Appeals erred when it held the statute does not violate due process principles set forth in the Fourteenth Amendment. We believe the analysis may be more nuanced than our colleagues see it and thus prefer to resolve the case based on the State's failure to seek review of the district court's adverse determination. We leave to a later case whether K.S.A. 2018 Supp. 22-4905[l], on its face, fails a rational basis review.

BILES, J., joins the foregoing concurring opinion.

8